# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,     )
     )
       Plaintiff,     )
     )
     )
     v.     )     Cr. ID. No. 1510007181
     )
     )
DOMINIQUE M. TISINGER,     )
     )
       Defendant.     )

Submitted: September 7, 2023
Decided: December 27, 2023

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR LEAVE TO AMEND MOTION FOR POSTCONVICTION RELIEF SHOULD BE GRANTED AND AMENDED MOTION FOR POSTCONVICTION RELIEF SHOULD BE GRANTED

Erika R. Flaschner, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Natalie S. Woloshin, Esquire, Woloshin, Lynch & Associates, P.A, Attorney for Defendant Dominique M. Tisinger.

SALOMONE, Commissioner

This 27th day of December, 2023, upon consideration of Dominique M. Tisinger's ("Tisinger" or the "Defendant") Amended Motion for Postconviction Relief, it appears to the Court as follows:

## BACKGROUND AND PROCEDURAL HISTORY

On October 12, 2015, Wilmington Police responded to a 911 call from a citizen who alleged that an armed man was following her and threatening her life.[1] The caller provided her location and the police responded to the scene.[2] Upon interviewing the caller and another witness, the police learned that the subject was a black male wearing a black hooded jacket and white jeans and was walking with a white male on Lancaster Avenue.[3] Police checked the surrounding area and observed the Defendant wearing clothing as described by the witness and walking with a white male on Lancaster Avenue.[4] When the police pulled alongside the Defendant in a marked car, the Defendant immediately put his right hand into the right pocket of his jacket.[5] The police ordered the Defendant to stop and show his

---

[1] Commissioner's Report and Recommendation, *State v. Tisinger*, ID No. 1510007181, Superior Court Criminal Docket Index No. 62 (hereinafter "D.I.___")(Del. Super. Feb. 1, 2019).

[2] *Id.* at 2.

[3] *Id.*

[4] *Id.*

[5] *Id.* at 3.

1

hands, whereupon he immediately fled.[6]  As he ran away, one of the officers on the scene, Officer Pruitt, observed the Defendant remove a gun from his person and throw it to the ground.[7]  Officer Pruitt was within 10 feet of the Defendant when he threw away the gun.[8]  Other nearby officers apprehended the Defendant shortly thereafter.[9]  After his arrest, the Defendant attempted to escape from the custody of another officer, Officer Reddick, while at the hospital for treatment.[10]

On June 7, 2016, after a bench trial, the Court found Tisinger guilty of Possession of a Firearm by a Person Prohibited ("PFBPP"), Possession of Ammunition by a Person Prohibited ("PABPP"), Carrying a Concealed Deadly Weapon ("CCDW"), Resisting Arrest, and Attempted Escape Third Degree.[11]  On October 7, 2016, Tisinger was sentenced to ten years and six months of unsuspended Level V incarceration, followed by decreasing levels of probation.[12]

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] D.I. 28.  Although Tisinger was convicted of Attempted Escape Third Degree, the State entered a nolle prosequi on this conviction prior to sentencing for the reasons discussed herein.

[12] Defendant was sentenced to ten years at supervision Level V on the PFBPP offense.  For CCDW, he was sentenced to eight years at supervision Level V, suspended for eight years at Level IV DOC discretion, suspended after six months at supervision Level IV, followed by probation.  For PABPP, Defendant was sentenced to five years at supervision Level V, suspended to for two years at supervision Level III.  For Resisting Arrest, Defendant was sentenced to one year and five days

On June 15, 2016, Tisinger filed a *pro se* Motion for Judgment of Acquittal or Alternatively a New Trial ("Acquittal Motion") arguing there was insufficient evidence to support the guilty verdicts.[13] Shortly thereafter, on July 25, 2016, Defendant filed a *pro se* Motion for Evidentiary Hearing and Appointment of Counsel in connection with his Acquittal Motion.[14] In his July 25th Motion, Defendant requested (i) an evidentiary hearing because the DNA evidence found on the gun did not match his DNA and (ii) appointment of counsel due to alleged conflicts of interest and claims of ineffective assistance of counsel.[15] On August 15, 2016, in support of his Acquittal Motion, Defendant sent a letter directly to the Court presenting newly discovered evidence in his case relating to charges brought against one of the police officers who had testified at trial.[16] On August 22, 2016, the Court sent a letter to trial counsel and the State advising that it would not consider the Defendant's *pro se* submissions in accordance with Superior Court Criminal Rule

at supervision Level V, suspended for one year at supervision Level I. These sentences of confinement run consecutively. Sentence Order, *State v. Tisinger*, ID No. 1510007181, D.I. 39 (Del. Super. Oct. 7, 2016). In addition to the foregoing, Defendant was sentenced to six months at supervision Level V for violating his probation on an original charge of drug dealing plus an aggravated felony. *See* Violation of Probation Sentence Order, *State v. Tisinger*, ID No. 1309007882, D.I. 16 (Del. Super. Oct. 7, 2016).

[13] D.I. 30.

[14] D.I. 32.

[15] *Id.*

[16] D.I. 33.

47 unless the motions were endorsed by his trial counsel.[17] Counsel declined to endorse those submissions as she believed them to be without merit.[18] Both motions were denied by the Court on September 15, 2016.[19]

After sentencing, Defendant filed a *pro se* Motion for Modification of Sentence on January 6, 2017, which the Court denied on March 7, 2017.[20] On November 29, 2016, Tisinger filed a *pro se* Notice of Appeal to the Delaware Supreme Court, but that appeal was dismissed for failure to file within 30 days after imposition of his sentence as required by Delaware Supreme Court Rule 6(a)(iii).[21]

Defendant filed a *pro se* Motion for Postconviction Relief on September 25, 2017,[22] which was referred to a Commissioner for proposed findings of fact and conclusions of law in accordance with 10 *Del. C.* § 512(b) and Superior Court

---

[17] D.I. 34. Under Superior Court Criminal Rule 47, "[t]he court will not consider pro se applications by defendants who are represented by counsel unless the defendant has been granted permission to participate with counsel in the defense." At the time the Defendant submitted his motions, he was still represented by trial counsel and the Court had not granted him permission to participate with trial counsel in his defense.

[18] D.I. 37.

[19] D.I. 38.

[20] D.I. 41, 43-44. Although the Court denied Defendant's Motion for Modification of Sentence, the Court filed a Corrected Sentence Order on March 7, 2017. *Id.*

[21] D.I. 45. *See Tisinger v. State*, 160 A.3d 1134, 2017 WL 1422624, at *1 (Del. Apr. 20, 2017)(TABLE).

[22] D.I. 46.

4

Criminal Rule 62.[23]  After protracted briefing, Defendant filed a *pro se* Motion for Default Judgment on October 10, 2018.[24]  The Commissioner issued his Report and Recommendation on February 1, 2019, advising the Court to deny Defendant's Motion for Postconviction Relief, including Defendant's ineffective assistance of counsel claims, and to deny his Motion for Default Judgment (the "Commissioner's Report").[25]  Defendant did not file any objections to the Commissioner's Report within the ten days required under Rule 62(a)(5)(iii).  On April 2, 2019, the Court adopted *in toto* the findings of fact and recommendations set forth in the Commissioner's Report.[26]

On May 9, 2019, Defendant filed a Petition for a Writ of Habeas Corpus, asserting certain of the claims previously raised in his Motion for Postconviction Relief.[27]  The Petition was denied by the Court on May 20, 2019 because the claims were duplicative.[28]

---

[23] D.I. 48.  During the time the Motion for Postconviction Relief was pending, the assigned Commissioner was appointed as a Judge in the Court of Common Pleas but sat by designation as a Commissioner of the Superior Court for purposes of the Motion for Postconviction Relief.

[24] D.I. 58.  Defendant also filed a Reply to the State and Defense Counsel's supplemental submissions on November 5, 2018.  D.I. 61.

[25] D.I. 62.

[26] D.I. 64.

[27] D.I. 65.

[28] D.I. 68-69.

On June 15, 2020, Defendant filed a Motion for Appeal from the Commissioner's Report.[29] In his Motion, Tisinger asserts that he was transferred from the Delaware Department of Corrections to the Pennsylvania Department of Corrections on January 14, 2019 as part of an interstate compact agreement.[30] Tisinger claims he was never served a copy of the Commissioner's Report due to the transfer and requested that the Court reconsider its decision to adopt the Commissioner's Report. On October 13, 2020, the Court vacated its Order Adopting the Commissioner's Report and reissued it to allow Tisinger the opportunity to file an appeal to the Commissioner's Report.[31]

On October 22, 2020, for the first time, Defendant filed a Motion for Appointment of Counsel in connection with his Motion for Postconviction Relief.[32] On the same day, he filed a letter with the Court seeking an extension of time to object to the Commissioner's Report.[33] The Court granted the extension making Tisinger's objections to the Commissioner's Report due on or before December 1,

---

[29] D.I. 70.

[30] The Court confirmed with the Delaware DOC Department of Records that Defendant was transferred out of Delaware on January 15, 2019, and returned to Delaware on July 21, 2020.

[31] D.I. 71.

[32] D.I. 73.

[33] D.I. 72.

2020.[34]   Defendant filed his objections to the Commissioner's Report *pro se* on November 23, 2020 ("Defendant's Objections").[35]   On December 11, 2020, the Court granted the Motion for Appointment of Counsel and made clear counsel would be entitled to supplement Defendant's Objections.[36]

Postconviction counsel was appointed on January 18, 2022.[37]   On September 15, 2022, postconviction counsel requested that the Court enter a briefing schedule and set February 24, 2023 as the deadline for postconviction counsel to supplement Defendant's Objections.[38]   The Court issued a briefing schedule on September 16, 2022 with postconviction counsel's supplemental response being due on the requested date.[39]   On February 21, 2023, postconviction counsel sought an extension of the February 24, 2023 deadline to April 24, 2023, which extension the Court granted on April 12, 2023.[40]   On the following day, postconviction counsel sought a second extension until June 5, 2023, which the Court also granted.[41]

---

[34] D.I. 74.

[35] D.I. 76.

[36] D.I. 75.

[37] D.I. 77.

[38] D.I. 78.

[39] D.I. 80.

[40] D.I. 81-82.

[41] D.I. 83.

Postconviction counsel filed her supplemental response to Defendant's Objections on June 5, 2023.[42]  The State's response to Defendant's Objections was filed on July 28, 2023 and Defendant's Reply was filed on August 29, 2023.[43]  On September 7, 2023, the case was referred to the undersigned Commissioner for proposed findings of facts and conclusions of law.[44]

## SUPPLEMENT TO DEFENDANT'S OBJECTIONS

In his *pro se* Motion for Postconviction Relief, Tisinger asserts four claims of ineffective assistance of counsel, all of which the Commissioner found to be without merit.[45]  Through postconviction counsel, Tisinger raises but one objection to the Commissioner's Report.[46]  Namely, the Commissioner's finding with respect to Ground Four which relates to the newly discovered evidence Tisinger raised in support of his Acquittal Motion .[47]

---

[42] D.I. 84-87.

[43] D.I. 88-89.

[44] D.I. 90.

[45] D.I. 62.

[46] D.I. 84-87. As postconviction counsel's supplemental response addresses only certain of the issues raised by Tisinger in Defendant's Objections, the Court will only address those issues raised by postconviction counsel.

[47] In Ground Four of his *pro se* Motion for Postconviction Relief, the Defendant specifically states as follows:

> Officer Reddick gave and submitted a police report then got on the stand at trial and he didn't remember none of the events that he reported.  Also, Officer Reddick was charged with Second Degree

Specifically, in his initial *pro se* Motion for Postconviction Relief, Tisinger states that one of the police officers that testified against him at trial, Detective Reddick, had been charged with, among other things, arson and providing false statements sometime after Tisinger's trial.[48] Given that providing false statements is a charge of dishonestly, Tisinger claims that it raises questions regarding the credibility of Detective Reddick's testimony and justifies holding a new trial.[49] Trial counsel responded to this claim by stating that "[t]he State's decision to enter a *Nolle Prosequi* on the Attempted Escape in the Third Degree moots Mr. Tisinger's issue regarding newly discovered evidence."[50]

In the Commissioner's Report, the Court made the following findings with respect to Ground Four:

> Defendant's statement that Officer Reddick was charged with various offenses subsequent to his arrest is indeed accurate. However, Defendant presented no evidence that calls into question the truth or reliability of Officer Reddick's very limited trial testimony. Additionally, the State entered a *nolle prosequi* as to the sole charge involving Office[r] Reddick prior to sentencing in an effort to cur[e] any litigation issues related to Officer Reddick's testimony. Because Officer Reddick was not

Arson and providing false statements and other charges but was not convicted of these crimes at the time of trial.

[48] D.I. 46 at 3.

[49] D.I. 85 at 8-12.

[50] D.I. 50 (incorporating by reference trial counsel's letter, dated September 2, 2016, to Judge Medinilla, D.I. 37).

9

involved in the initial stop of Defendant or the recovery of the firearm, any issues as to his credibility are attenuated at best.[51]

Tisinger objects to the Commissioner's Report with respect to its findings regarding Officer Reddick's testimony, arguing that his testimony was not limited to the charge of Attempted Escape Third Degree but rather played a larger role at trial.[52] To that end, the Defendant asserts that the State relied upon Officer Reddick to bolster the credibility of other testifying officers and also testified regarding his observations on the scene just prior to the Defendant being placed into custody.[53] Specifically, Officer Reddick testified that while he was in his patrol car he saw a black male wearing a black hoodie run across Chestnut Street in the area where Officer Parrott was located.[54] He further testified that when he saw the man running he was alone, which testimony was contrary to that of other officers who saw the Defendant walking with another individual.[55]

In closing, the State argued that the incident occurred in "a residential area where certain viewpoints would be blocked" to explain why certain officers were

---

[51] D.I. 62 at 8.

[52] D.I. 85 at 9-10.

[53] D.I. 86 (Trial transcript at 67-81).

[54] *Id.* (Trial transcript at 70).

[55] *Id.*

not able to see the actual tossing of the gun.[56] With respect to Officer Reddick's testimony, the State argued that the obstructed views also explain "why Detective Reddick, when coming on scene, may have just seen the defendant running by but wouldn't have actually seen his apprehension and the gun toss."[57] According to the Defendant, the State's own arguments during closing demonstrate that Officer Reddick was not merely used to support the Attempted Escape Third Degree charge but was used to support the State's theory of the case. As such, Tisinger argues that the newly discovered evidence of Officer Reddick's arrest for crimes regarding dishonesty justifies a new trial for the Defendant and objects to the Commissioner's Report that postconviction relief be denied on this claim.

Upon a review of the record, the Court concurs with the findings as set forth in the Commissioner's Report with respect to the ineffective assistance of counsel claim articulated in Ground Four. Detective Reddick's testimony was not an essential component in proving the State's case in chief. Rather, it could be argued that his testimony undermined the State's case in that it required the prosecution to explain the discrepancy in Detective Reddick's testimony from that of other witnesses during closing argument. But for the charge of Attempted Escape Third Degree, it is unlikely that the State would have called Detective Reddick as a witness

---

[56] D.I. 87 (Trial transcript at 130).

[57] *Id.*

11

as it relied upon the testimony of two different detectives in very close proximity to the Defendant to prove the charges of PFBPP, PABPP and CCDW, both of whom had unobstructed views of the Defendant and who saw the actual toss of the gun.[58]

Detective Reddick's testimony was, however, critical to proving the charge of Attempted Escape Third Degree. But, by entering a *nolle prosequi* with respect to that conviction, any credibility issues with respect to Detective Reddick's testimony raised in the Defendant's Objections are mooted. For the foregoing reasons, the newly discovered evidence of Officer Reddick's arrest for crimes of dishonesty provides insufficient grounds to justify a new trial.

### AMENDED MOTION FOR POSTCONVICTION RELIEF

Tisinger requests leave of Court to file an Amended Motion for Postconviction Relief. Pursuant to Superior Court Criminal Rule 61(a)(6), a motion for postconviction relief "may be amended as a matter of course at any time before a response is filed or thereafter by leave of court which shall be freely given when justice so requires."[59] For the reasons discussed herein, justice requires that leave be given to amend Tisinger's *pro se* Motion for Postconviction Relief.

---

[58] *Id.* at 130-31.

[59] Super. Ct. Crim. Rule 61(a)(6).

Tisinger filed a timely *pro se* Motion for Postconviction Relief on September 25, 2017.[60] At the time, he did not file a motion for the appointment of counsel. Had he done so in 2017, the Court would have granted his request for counsel pursuant to Superior Court Criminal Rule 61(e) as it was his first postconviction proceeding.[61] After the Court vacated its April 2, 2019 Order adopting the Commissioner's Report, Tisinger filed a Motion for the Appointment of Counsel, which the Court granted on December 11, 2020.[62] Once appointed, the Court directed postconviction counsel to file a supplement to Defendant's Objections.[63]

Having reviewed Tisinger's file, postconviction counsel argues that a meritorious claim exists that was not set forth in Defendant's initial *pro se* Motion for Postconviction Relief. That is, that trial counsel was ineffective for failing to perfect and preserve Tisinger's right to a direct appeal to the Delaware Supreme Court.[64] The Court finds merit in that claim and, as such, justice requires granting Defendant's request for leave to amend his *pro se* Motion for Postconviction Relief.

---

[60] D.I. 46.

[61] Super. Ct. Crim. Rule 61(e) provides that "[t]he court will appoint counsel for an indigent movant's first postconviction proceeding."

[62] D.I. 73, 75.

[63] *Id.* at 75.

[64] D.I. 85 at 15.

13

## CLAIM FOR INEFFECTIVE ASSISTANCE OF COUNSEL

Delaware Supreme Court Rule 26(a) provides, in pertinent part, as follows:

(a) *Continuing obligation of and representative by counsel.* (1) Every trial attorney, whether privately retained, court appointed or provided by the Office of the Public Defender, shall in every case in which the client has been convicted or adjudged delinquent; . . .

> (i) *Advise client.*--Advise the client of any right to appeal, the possible grounds for appeal and counsel's opinion of the probable outcome of an appeal;
>
> (ii) *Docket appeal.*—Docket an appeal whenever the client desires to appeal, whether or not the appeal appears meritorious; and
>
> (iii) *Prepare documents.*—Prepare and file all documents relating to the appeal, including those relating to the transcript as required by Rule 9.
>
> Such attorney, until this Court orders otherwise, shall continue to represent on appeal. . . .

The Delaware courts have addressed this continuing obligation of trial counsel in a number of decisions. In *Dixon v. State*, the Supreme Court found that trial counsel's failure to file a direct appeal on behalf of his client constituted ineffective assistance of counsel.[65] In *Dixon*, the defendant directed his private trial counsel to take an appeal to the Delaware Supreme Court, but trial counsel advised his client

---

[65] *Dixon v. State*, 581 A.2d 1115 (Del. 1990).

that he needed to pay additional attorney's fees for counsel to represent him on appeal.[66] Counsel sent the defendant two letters which explained that the defendant had thirty (30) days to file his notice of appeal to the Supreme Court and advised his client to contact the Public Defender's Office to represent him on appeal.[67] The Supreme Court found that Dixon's trial counsel failed to fulfill his duties under Delaware Supreme Court Rule 26 and had a continuing obligation to "perfect and prosecute a direct appeal" on behalf of Dixon, whether or not he was paid an additional fee, until such time as he was permitted to withdraw by the court.[68]

Likewise, in *State v. Mitchell*, the defendant brought a claim for ineffective assistance of counsel with respect to trial counsel's failure to effect a timely appeal on his behalf to the Delaware Supreme Court.[69] At issue before the court was what remedy should a defendant be afforded when trial counsel, who is still the attorney of record, fails to perfect an appeal within the required time period, when requested to do so by his client.[70] *In Mitchell*, the factual claims were at odds. Trial counsel

---

[66] *Id.* at 1116.

[67] *Id.*

[68] *Id.* at 1117 (citing *Erb v. State*, 332 A.2d 137, 139 (Del. 1974); *see also Braxton v. State*, 479 A.2d 831, 834 (Del. 1984) (holding that trial counsel who, against his client's wishes and obligations under Supreme Court rules, fails to perfect a timely direct appeal is ineffective).

[69] *State v. Mitchell*, 1994 WL 149263.

[70] *Id.* at *3.

asserted that his client never requested that he file an appeal whereas the defendant indicated that he had made such a request.[71] While the Court found trial counsel's assertions to be more credible, the Court also found that there may have been a miscommunication between the parties and that the interest of justice required that the defendant be given the "right to appeal the conviction and sentence if he wishes to do so."[72] For those reason, the court (i) granted the defendant's motion for postconviction relief on the sole ground of ineffective assistance of counsel for trial counsel's failure to perfect a direct and timely appeal to the Delaware Supreme Court and (ii) vacated and immediately reimposed the defendant's sentence to allow him the opportunity to file a direct appeal within thirty days of the effective date of the new sentencing order.[73]

In *Proctor v. State*, the Delaware Supreme Court endorsed this remedy in similar factual circumstances.[74] Proctor filed an untimely *pro se* notice of appeal, but the evidence was conflicting as to whether he had notified his counsel of his

---

[71] *Id.*

[72] *Id.*

[73] *Id.*

[74] *Proctor v. State*, 788 A.2d 528 (Del. 2001) (TABLE); *compare State v. Garris,* 2002 WL 31484801(denying defendant's motion for postconviction relief on the ground that her counsel's representation was ineffective by his failure to file a timely direct appeal where the evidence supported trial counsel's assertion that he was not directed to file an appeal by his client).

desire to file a direct appeal.[75]  Despite the foregoing, the Court found that the defendant had "manifested an intent to docket a direct appeal" by his own, albeit untimely, filing and concluded that, under the circumstances of that case, "the Superior Court should consider resentencing Proctor to renew the time to file the appeal."[76]

Here, as in *Proctor*, Tisinger filed an untimely *pro se* Notice of Appeal to the Delaware Supreme Court and it is unclear as to whether he had directed his trial counsel to file the appeal.  Upon receiving Tisinger's untimely appeal, the Supreme Court issued a rule to show cause why the appeal should not be dismissed.[77]  Tisinger explained that the untimeliness was attributable to a number of factors, including a lack of communication with his trial counsel.[78]  Specifically, Tisinger claims he contacted trial counsel numerous times to speak with her about his appeal but received no response.[79]  The Delaware Supreme Court directed trial counsel to respond to Tisinger's assertion.[80]  Trial counsel indicated that she discussed the

---

[75] *Id.*

[76] *Id.*  The Supreme Court also noted that "[t]he alternative remedy would appear to be a motion for postconviction relief pursuant to Superior Court Criminal Rule 61 filed by Proctor in accordance with *Braxton v. State*."

[77] D.I. 87 (Appendix 2 at A211).

[78] D.I. 87 (Appendix 2 at A213-14).

[79] *Id.*

[80] D.I. 87 (Appendix 2 at A215).

17

appeal process with the Defendant the day before sentencing and advised him of the need to file an appeal within 30 days after sentencing, but she had no record of any communications from the Defendant after he was sentenced.[81]

As in *Mitchell*, the Court has no reason to doubt the credibility of trial counsel's statements but does have concerns that there may have been some miscommunication between trial counsel and the Defendant regarding his desire to appeal the conviction. Or, perhaps, his attempts to contact her were not properly recorded and communicated to trial counsel. However, as in *Proctor*, the Court finds the fact that Tisinger filed a *pro se* Notice of Appeal, albeit untimely by a few weeks, manifested his desire and intent to file a direct appeal to the Delaware Supreme Court in 2017.

The State contends that the request for leave to amend the Defendant's *pro se* Motion for Postconviction Relief is untimely and that Tisinger had every opportunity to make the claim of ineffective assistance of counsel for failure to file a timely direct appeal back September 2017 when he filed his initial motion.[82] Moreover, the State asserts that Tisinger has not alleged what, if anything, he would have raised on appeal.[83] Both points raised by the State are true, but the first does not address the

---

[81] D.I. 87 (Appendix 2 at A229-31).

[82] D.I. 88.

[83] *Id.*

18

underlying reason indigent defendants are appointed counsel routinely in their initial motions for postconviction relief—most are not attorneys or otherwise learned in the law. Had Tisinger been aware of Delaware Supreme Court Rule 26 and the case law interpreting trial counsel's continuing obligations thereunder, he likely would have included a claim for failure to file a timely direct appeal in his *pro se* Motion for Postconviction Relief. Obviously, he did not. He needed appointed postconviction counsel to see and raise that claim for him.

With respect to what claims the Defendant intends to bring in a direct appeal when filed with the assistance of counsel, that remains to be seen, but the Court sees no requirement that Tisinger raise them at this juncture to be afforded the remedy requested given the unique circumstances of this case.

### CONCLUSION

For all of the foregoing reasons, Tisinger's Motion for Leave to Amend Motion for Postconviction Relief should be **GRANTED**. The Amended Motion for Postconviction Relief should be **GRANTED** on the sole ground of ineffective assistance of counsel for trial counsel's failure to perfect a direct and timely appeal to the Delaware Supreme Court. Accordingly, Defendant's sentence should be **VACATED** and then be immediately **REIMPOSED** to allow the Defendant to file an appeal with the Delaware Supreme Court with the assistance of appointed counsel within thirty (30) days of the effective date of the reimposed sentence.

19

**IT IS SO RECOMMENDED.**

/S/ *Janine M. Salomone*
The Honorable Janine M. Salomone

oc: Prothonotary
cc: Erika Flaschner, Esquire, Deputy Attorney General
Natalie Woloshin, Esquire, Postconviction counsel
Dominique Tisinger, Defendant